LENA AND EINAR R. STEFANSSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stefansson v. Commissioner
Docket No. 21181-91
United States Tax Court
T.C. Memo 1994-162; 1994 Tax Ct. Memo LEXIS 163; 67 T.C.M. (CCH) 2685; April 18, 1994, Filed *163 Decision will be entered under Rule 155. Lena and Einar R. Stefansson, pro sese. For respondent: Russell D. Pinkerton. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined a deficiency in petitioners' 1987 Federal income tax and additions to tax as follows: Additions to Tax Deficiency
Sec. 6653(b)(1)(A)
Sec. 6653(b)(1)(B)
Sec. 6661
$ 65,259
$ 48,944.25
50 percent of the
$ 16,314.75
interest due on
$ 65,259
After concessions by the parties, the issues for decision are: (1) Whether income diverted by petitioners from a HUD escrow account should be offset by losses of their wholly owned S corporation; [1] *164 and (2) whether petitioners are liable for additions to tax as determined by respondent. [2]
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, first supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. Petitioner Lena Stefansson resided in Alderson, West Virginia, and petitioner Einar Stefansson resided in Terre Haute, Indiana, at the time the petition was filed. Petitioner *165 Lena Stefansson was involved in the buying, renovation, and sale of homes from the late 1960's to 1988. She went to real estate and appraisal schools, obtained a real estate broker's license in 1967, and has taken college-level courses in legal research and general law. In 1983, prior to marrying Mr. Stefansson, Mrs. Stefansson became the Indiana closing agent for single-family residential properties sold by the Department of Housing and Urban Development (HUD). Petitioners were married in 1984 and continued the operation of Mrs. Stefansson's Schedule C business, Indianapolis Realty, with Mr. Stefansson as office manager and employee supervisor of the business. Mr. Stefansson also located properties for purchase, rehabilitation, and sale by Indianapolis Realty. Mr. Stefansson, a citizen of Iceland, attended 2 years of commercial college in that country, and took courses in international business, accounting, and economics. He bought, rehabilitated, and sold property in Iceland prior to moving to the United States. Petitioners' duties under the HUD contract were sophisticated and varied. They included collecting and depositing sales proceeds, paying all taxes and other bills *166 attributable to the sales, finalizing closing documents, recording deeds, ensuring clean title, and transferring documents to HUD. Under the HUD contract, petitioners handled 1,300 to 1,500 closings yearly, involving $ 25 to $ 30 million. Petitioners' contract required them to wire transfer sales proceeds to HUD within 24 hours of closing. Indianapolis Realty maintained an escrow account for the HUD proceeds. In 1986, petitioners organized National Mortgage of Indiana (National Mortgage), an S corporation. Petitioners obtained direct endorsement authority for HUD loans by National Mortgage, allowing it to underwrite and close HUD loans without submitting the loan documents to HUD for insurance endorsement. Petitioners also organized American Title Corp. (American Title), an S corporation, to provide title insurance to customers. Petitioners owned 100 percent of both corporations. Mr. Stefansson served as president of American Title and office manager and employee supervisor for all three of petitioners' businesses, which employed approximately 25 to 30 persons. Mrs. Stefansson personally signed the paychecks for the employees of the three businesses, and she signed and sent *167 in the employment tax returns for the employees. Beginning in 1986, petitioners employed one bookkeeper, Josephine Reisinger, for American Title and National Mortgage. She maintained a simple, single-entry bookkeeping system for these two businesses and managed checking accounts for all three of petitioners' businesses. Mrs. Stefansson was able to and did reference the books when she had questions regarding business transactions of the two corporations. She carefully monitored and signed all checks paid out of the two corporations and had a good memory for transaction amounts. Petitioners did not maintain any ledger or journal for their HUD escrow account. Petitioners violated numerous HUD requirements in their business dealings. Several times they completed closings without receiving the proper downpayments from buyers. Petitioners also used straw buyers for several properties they purchased in order to obtain financing. In 1987, petitioners diverted $ 209,639.29 from the HUD escrow account maintained by Indianapolis Realty. The monthly flow in and out of the HUD escrow account approximated $ 2 million. Petitioners intentionally took advantage of the size of the account's *168 cash-flow to divert funds. They knew that HUD would not notice a shortage unless the contract was canceled. Petitioners used diverted funds for their own purchases of property. During the year in issue, petitioners lived in a large house in a prestigious neighborhood. In 1987 or 1988, petitioners purchased a 1987 Mercedes for $ 50,000, financing it with Mrs. Stefansson's credit card and a bank loan. Petitioners used some of the diverted funds to subsidize the operations of American Title and National Mortgage and to bolster corporate accounts with insufficient funds. Of the total diverted funds for 1987, they transferred $ 150,000 directly to American Title. Ms. Reisinger posted these transfers to an American Title "transfer account", out of which funds would soon be removed. If it appeared to Ms. Reisinger that the diverted funds would not be repaid soon, the books would reflect an intercompany loan from Indianapolis Realty to American Title. There was no supporting documentation for such loans. The diverted funds were not reflected in the income statement of American Title. Mrs. Stefansson reviewed the books kept by Ms. Reisinger. Ms. Reisinger expressed to Mrs. Stefansson *169 her uneasiness regarding the diversion of funds but was told not to worry. Petitioners knew that their transfers of diverted funds between corporations and for their own use was wrong, but did not tell anyone because they wished to conceal their wrongdoing. Mr. Stefansson wrote checks on an American Title account repaying $ 84,000 to the HUD escrow account during 1987. Several of these checks were written on the same day in smaller denominations in order to conceal the repayment of diverted funds. Other amounts were repaid to the escrow account in the form of checks from other sources, leaving a net diversion for 1987 of $ 112,139.79. Petitioners did not report any of the diverted funds as income on their joint Federal income tax returns, or on the returns of American Title and National Mortgage. Petitioners' 1987 return shows taxable income of $ 1,193. American Title's 1987 Form 1120S shows a loss of $ 26,619. National Mortgage's 1987 Form 1120S shows a loss of $ 36,038. On May 8, 1990, petitioners pleaded guilty in the United States District Court for the Southern District of Indiana to four (Mrs. Stefansson) and three (Mr. Stefansson) counts of a criminal information. *170 The counts to which they pleaded guilty related to certain of the activities described above, and the additional crimes in later years of theft, embezzlement, conversion, publishing false statements, and fraud. Count 4 of the information, to which both petitioners pleaded guilty, states: On or about August 15, 1988, at Indianapolis in the Southern District of Indiana, LENA R. STEFANSSON and EINAR STEFANSSON, defendants herein, willfully did make and subscribe to a Federal Income Tax Return, IRS Form 1040, which was verified by written declaration that it was made under the penalties of perjury, and which was filed with the Director of the Internal Revenue Service at the Memphis Service Center, and which tax return LENA R. STEFANSSON and EINAR STEFANSSON did not believe to be true and correct as to every material matter in that said tax return contained an understatement of income in the approximate amount of $ 112,000; all in violation of Title 26, United States Code, Sections 7206(1) and 2.
Petitioners pleaded guilty to these counts in the criminal information because they were guilty of the charges. [3] Both served time in prison for their offenses. *171 OPINION The first issue for decision is whether the $ 112,139.79 diverted by petitioners should be regarded as income to them directly, or whether some or all of it should have been reported on the return of American Title. The parties have stipulated that petitioners diverted all the converted funds "to their personal use". Petitioners' stipulation precludes a holding in their favor. Despite this stipulation, petitioners argue on brief that the diverted funds were properly reportable as income to American Title, their wholly owned S corporation. Consequently, petitioners contend that this income should be passed through American Title, see sec. 1366(a)(1)(A), and reduced by the corporation's losses. Petitioners diverted a net amount of $ 46,139.79 by way of checks written on the HUD account payable to "Cash" and to various banks. They made no attempt to explain how these funds were used, and they agree that these funds were not repaid. The diverted $ 46,139.79 must be considered income to them directly. The evidence also shows that petitioners diverted a net amount of $ 66,000 in the form of checks written directly to American Title. Petitioners were the perpetrators of *172 this illegal diversion of funds. It is well settled that the proceeds of conversion, embezzlement, or theft constitute income to the perpetrator. James v. United States, 366 U.S. 213, 219-220 (1961); Bailey v. Commissioner, 420 F.2d 777, 778 (5th Cir. 1969), affg. 52 T.C. 115 (1969); Fox v. Commissioner, 61 T.C. 704, 713-714 (1974). Petitioners provided no evidence of how the diverted funds were used by American Title. Ms. Reisinger testified that the funds were transferred to a "transfer account" out of which funds were expected to be removed soon. The diverted funds were not placed into the income statement of American Title. Moreover, petitioners admitted at trial that they "may" have used some of the diverted funds to finance the purchase of the building used for their office. In addition, petitioners were living in a large home in a prestigious neighborhood and purchased a luxury automobile during the period in which they diverted funds, while at the same time claiming that their businesses during this period were not profitable and were operating on *173 "borrowed money". Petitioners pleaded guilty to wilfully filing a false return under section 7206(1) and (2). The information to which petitioners pleaded charges that petitioners understated their own income by approximately $ 112,000, which is roughly the amount of the net diversion here at issue. We note Mrs. Stefansson's own explanation at trial: Q [Respondent] Isn't it true that this money was taken from the HUD escrow account for your personal use? A [Mrs. Stefansson] It was put into the use of the business. The bottom line is our personal use, I suppose. * * * [Emphasis added.]
We find that petitioners diverted all the funds at issue to their personal use as stipulated and that the net diversion should not be reduced by the reported losses of American Title. [4] Therefore, we sustain respondent's determination as to the diverted funds. Respondent determined that petitioners are liable for additions to tax for fraud under section *174 6653(b)(1)(A) and (B). Respondent concedes that the additions are applicable only to the underpayment of tax attributable to the $ 112,139.79 of omitted income. Respondent bears the burden of proving by clear and convincing evidence that: (1) An underpayment exists for the year in issue, and (2) that some portion of the underpayment is due to fraud. [5]Sec. 7454(a); Rule 142(b); Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Habersham-Bey v. Commissioner, 78 T.C. 304, 311 (1982). To meet this burden, respondent must show that petitioners intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never *175 presumed. It must be affirmatively established by clear and convincing evidence. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). However, fraud may be proved by circumstantial evidence and reasonable inferences drawn from proven facts, because direct proof of a taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492, 500 (1943); Rowlee v. Commissioner, supra.The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). *176 We have already found that petitioners omitted $ 112,139.79 from their income for 1987. Thus, an underpayment exists for the year in issue. Petitioners contend, however, that they had no intent to evade tax. We disagree. There is no question that petitioners were aware of their duty to report and pay tax on income received by them and their corporations. Moreover, petitioners agree that the diverted funds were indeed income (to someone). However, petitioners did not report the diverted amounts on any return, either as individuals, or for their corporations, as officers and 100-percent shareholders. [6]Understating income is a typical "badge of fraud". Cassidy v. Commissioner, 814 F.2d 477, 482 (7th Cir. 1987), affg. T.C. Memo. 1986-133; Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601. *177 Another such badge is illegal activity and attempts to conceal it. Bradford v. Commisioner, supra at 308. Petitioners illegally diverted Government funds held in escrow for their own personal use in violation of several statutes. Petitioners did not apprise their accountants, auditors, or the Government of these diversions. A taxpayer's willingness to defraud another in a business transaction may point towards willingness to defraud the Government. Solomon v. Commissioner, 732 F.2d 1459, 1462 (6th Cir. 1984), affg. T.C. Memo. 1982-603. Another badge of fraud is the failure to keep adequate records. Id. at 1461. Petitioners kept no records on the HUD escrow account. Moreover, they falsified records relating to their diversions by allowing Ms. Reisinger to post transfers to American Title as loans, despite the fact that no loan documentation existed. See Cassidy v. Commisioner, supra at 482. Petitioners pleaded guilty to criminal charges under section 7206(1). While convictions under section 7206(1) do not collaterally *178 estop petitioners from denying that they fraudulently understated their tax liability, we may consider such convictions as evidence in analyzing fraud. Wright v. Commissioner, 84 T.C. 636, 643-644 (1985). Given the language of the information and petitioners' stipulation that they pleaded guilty to the information because they were guilty, we find petitioners' convictions to be persuasive evidence that they had an intent to evade taxes. Based on the foregoing, we find that respondent has satisfied the burden of proving fraud with respect to the underpayment of tax attributable to the full amount of funds ($ 112,139.79) diverted and not reported. Respondent also determined an addition to tax for substantial understatement under section 6661. [7] Petitioners bear the burden of proof on this issue. They offered no evidence on this issue nor did they make any argument on brief. In any event, we have found that petitioners omitted $ 112,139.79 from income on their return. The corresponding understatement of tax satisfies both tests for substantiality under section (661(b)(1)(A). Thus, we sustain respondent's determination under section 6661. *179 Decision will be entered under Rule 155. Footnotes
1. Respondent also determined that petitioners had not substantiated a $ 7,069 deduction for wages paid to an employee. Respondent now concedes that the amount left unsubstantiated is only $ 5,504.05. Respondent appears to believe that petitioners conceded this remaining amount at trial. Petitioners' statements at trial in this regard were unclear. However, petitioners presented no evidence on this item and made no arguments on brief. We find, therefore, that they have abandoned the issue. E.g., Bradley v. Commissioner, 100 T.C. 367, 370 (1993); Leahy v. Commissioner, 87 T.C. 56, 73-74↩ (1986).
2. At trial, respondent conceded that the additions to tax pursuant to sec. 6653(b) should apply only to the tax attributable to the $ 112,139.79 of income diverted from HUD. On brief, respondent argues that the sec. 6653(a) addition to tax for negligence should apply to the tax attributable to other adjustments. Respondent first raised the negligence issue in the answer and thus bears the burden of proof on that issue. Rule 142↩. Respondent has not proven that the other adjustments were caused by petitioners' negligence.
3. Petitioners signed their Form 1040 for the year in issue on Aug. 15, 1988. Thus, it is clear that the 1987 return is the one referred to in the information.↩
4. The evidence supporting this finding is clear and convincing.↩
5. Strangely, petitioners, in their reply to respondent's answer, admit that "A part of the underpayment of tax required to be shown on petitioners' income tax return for the taxable year 1987 is due to fraud." Neither party noted this at trial or on brief, despite the primary importance of the fraud issue in these proceedings. We will, therefore, address the issue as argued and presented by the parties.↩
6. Since American Title was an S corporation, any income to it would have been passed through to petitioners after offset by losses. Sec. 1366(a)(1). At most, the record indicates that American Title may have had $ 26,619 in unused losses in 1987. Thus, at least $ 40,000 of the net diversion to American Title would have been passed through to petitioners in any event.↩
7. Respondent contends on brief that petitioners have conceded this issue. We find no evidence of such concession in the record, and on brief, petitioners list this as an issue remaining in dispute. However, petitioners did not argue or present any evidence on the issue.↩